**CHERCHE PREZEAU**
**COLIN PHELPS**
**CHRISTENSEN & PREZEAU, PLLP**
24 W. 6TH AVE., SUITE 501
HELENA, MT  59601
(406) 442-3690 (PHONE)
(406) 603-4008 (FAX)
cherche@cplawmt.com
colin@cplawmt.com

**ATTORNEYS FOR DEFENDANT/COUNTERCLAIMANT,**
**CEC FACILITIES GROUP, LLC**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION
\* \* \* \*

| | |
|---|---|
| **KLJ ENGINEERING SOLUTIONS HOLDING CO. d/b/a KLJ ENGINEERING, LLC,** | **CAUSE NO. CV-24-128-BLG-TJC** |
| Plaintiff, | **CEC FACILITIES GROUP, LLC'S COUNTERCLAIM AND DEMAND FOR JURY TRIAL** |
| vs. | |
| **CEC FACILITIES GROUP, LLC; and LIBERTY MUTUAL INSURANCE COMPANY** | |
| Defendants. | |
| **CEC FACILITIES GROUP, LLC,** | |
| Counterclaimant, | |
| vs. | |
| **KLJ ENGINEERING SOLUTIONS HOLDING CO.** | |

**d/b/a KLJ ENGINEERING, LLC,**       )
                                                           )
                Counter-Defendant.       )

\* \* \* \*

COMES NOW Defendant/Counterclaimant, CEC Facilities Group, LLC ("CEC"), and for its Counterclaim against Plaintiff, KLJ Engineering Solutions Holding Co. d/b/a KLJ Engineering, LLC ("KLJ"), alleges as follows:

## PARTIES AND JURISDICTION

1. Counterclaimant, CEC, is a Texas limited liability company with its principal place of business in Irving, Texas.

2. Upon information and belief, Counter-Defendant, KLJ, is a North Dakota limited liability company with its principal place of business in Bismarck, North Dakota.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because diversity of citizenship exists between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the actions or omissions giving rise to CEC's

claims occurred in this District, and the property that is the subject of this action is situated in this District.

## FACTS

5. In June 2021, CEC contracted with TDS Metrocom, LLC ("TDS"), to design and install over 500 hundred miles of fiber optic telecommunications infrastructure in Billings, Montana (the "Project").

6. That same month, CEC executed a Master Subcontract Agreement with KLJ (the "MSA"). A true and correct copy of the MSA is attached hereto as Exhibit 1.

7. The parties subsequently executed a work order pursuant to the MSA for KLJ to provide design, permitting, and construction administration services for the Project (the "Subcontract"). A true and correct copy of the Subcontract is attached hereto as Exhibit 2.

8. Although the Subcontract provided that the infrastructure would be 90% underground and 10% aerial, the Subcontract expressly granted the parties the ability to increase the amount of aerial infrastructure depending on Project conditions and KLJ's recommendations.

9. The Subcontract also set forth the specific design standards and specifications KLJ was required to meet to produce a payable, deliverable

design package.

10.     Under the Subcontract, KLJ agreed that it would only be paid for completed work if CEC received payment from TDS for that work.

11.     The parties' MSA similarly stipulated that CEC's receipt of payment from TDS was a condition precedent to CEC's obligation to pay KLJ. Moreover, under the MSA, KLJ expressly assumed the risk of nonpayment by TDS for any cause except default by CEC.

12.     CEC and KLJ commenced work on the Project in July 2021. By early spring 2022, it became apparent that the original plan to install 90% of the infrastructure underground was too expensive and too slow.

13.     CEC accordingly pivoted and during a meeting between the parties in March 2022, CEC expressly directed KLJ to propose designs that could be altered to aerial wherever and whenever possible. CEC and TDS repeatedly communicated their expectation that KLJ shift to aerial design packages in scheduled bi-weekly meetings between the parties following the express March directive.

14.     In July 2022, the parties negotiated and executed an amendment to the Subcontract formalizing the directive for KLJ to increase aerial design ("Change Order 6"). Change Order 6 also reduced the amount CEC would

pay KLJ for the services it performed under the Subcontract. A true and correct copy of Change Order 6 is attached hereto as Exhibit 3.

15. Despite CEC's repeated instructions to increase the aerial design mileage, execution of Change Order 6 formalizing CEC's directive, and six months of bi-weekly meetings among CEC, KLJ, and TDS on the subject, KLJ had completed no aerial designs meeting the Subcontract's requirements by November 2022.

16. That same month, CEC specified several additional areas for KLJ to redesign as aerial on an expedited basis for construction in 2023. KLJ requested additional compensation for the aerial design work, which prompted additional negotiations between the parties about the schedule and pricing for converting to aerial design.

17. The parties executed an amendment to the Subcontract in February 2023 formalizing the parties' negotiations for redesigning the additional areas CEC had identified ("Change Order 11"). A true and correct copy of Change Order 11 is attached hereto as Exhibit 4.

18. Change Order 11 specified that KLJ would need to provide the re-designed design packages pursuant to CEC's priorities, detailed the procedure and timeline for KLJ to complete the redesigns, and specified the

additional fees the parties negotiated to redesign these design packages.

19.     Despite being directed to convert designs to aerial whenever possible in March 2022, executing Change Order 6 formalizing this directive in July 2022, and executing Change Order 11 further formalizing the aerial design directive in February 2023, KLJ had not completed a single buildable aerial design package meeting the Subcontract's requirements by July 2023.

20.     KLJ's failure to complete a single buildable aerial design package meeting the Subcontract's requirements was, in part, due to the substandard quality of the designs KLJ submitted to CEC and to the relevant jurisdiction for review.

21.     CEC terminated KLJ for cause in late July 2023 due to KLJ's inability to deliver completed aerial designs according to Change Orders 6 and 11 and increased costs to CEC due to suboptimal designs, redesigns, and the resulting extension of the Project schedule.

22.     KLJ's failure or refusal to pursue and produce buildable aerial design packages and its substandard and/or noncompliant designs resulted in substantial additional construction and redesign costs to CEC and would have resulted in significantly higher costs throughout the life of the Project had CEC not terminated KLJ in July 2023. KLJ's failure to complete the aerial

redesigns pursuant to its contractual obligations has also caused CEC to miss Project deliverables and the Project completion deadline, which puts CEC at risk of owing TDS liquidated damages.

23. CEC contracted with a new engineering firm after terminating KLJ. The firm conducted a survey of the infrastructure completed using KLJ's designs and discovered that KLJ could have converted more of the completed and prospective infrastructure designs to aerial after CEC directed it to do so.

24. The new engineering firm has also informed CEC of numerous other problems with KLJ's work product necessitating costly re-designs and resulting in further Project delays.

25. NorthWestern Energy ("NWE") recently informed CEC that it would have to account for another "attacher" to NWE's poles. Because another company will be utilizing the poles CEC planned to use for its aerial infrastructure, CEC will now have to pay its new engineer to re-calculate all the necessary pole-load analyses KLJ completed for those poles to determine whether the poles can hold TDS's fiber optic cable. If the poles cannot hold TDS's cable, CEC will either need to install new poles that can hold the additional cable or go underground. Alternatively, TDS could reduce the

scope of the Project rather than choose to install fiber where a competitor was able to obtain design permission that KLJ failed to obtain over the course of many months. All of these potential outcomes will result in substantially increased Project costs or loss in revenue, which will, in turn, result in CEC incurring a substantial loss on the Project.

## COUNT I – BREACH OF CONTRACT

26. Plaintiff incorporates by reference Paragraphs 1-25 as if they were fully set forth herein.

27. KLJ agreed to and was bound by the terms of the MSA, the Subcontract, Changer Order 6, and Change Order 11.

28. The Subcontract set forth the specific design standards and specifications KLJ was required to meet to produce a payable, deliverable design package.

29. Change Order 6 and Change Order 11 amended the Subcontract and required KLJ to increase the amount of aerial design packages it produced.

30. KLJ breached the Subcontract, in part, by repeatedly submitting substandard design packages that did not comply with the jurisdiction's requirements.

31. KLJ breached Change Order 6 and Change Order 11, in part, by failing to produce a single buildable aerial design package meeting the Subcontract's requirements.

32. CEC has been damaged by KLJ's breaches of contract in an amount to be determined at trial but exceeding $75,000, plus interest to date and accruing thereafter.

### COUNT II – NEGLIGENCE

33. Plaintiff incorporates by reference Paragraphs 1-32 as if they were fully set forth herein.

34. KLJ had a duty to create design packages meeting industry and jurisdictional standards.

35. KLJ breached its duty by providing substandard and non-compliant design packages that failed to meet industry and/or jurisdictional standards.

36. CEC has been damaged by KLJ's breach of duty in an amount to be proven at trial, but exceeding $75,000.

### PRAYER FOR RELIEF

**WHEREFORE**, CEC respectfully requests the following relief:

A. That Plaintiff take nothing by its Complaint;

B.      That judgment be entered in CEC's favor and against KLJ on all causes of action alleged herein in an amount to be proven at trial;

C.      An award to CEC for damages in an amount to be proven at trial;

D.      An award to CEC of costs of suit incurred herein;

E.      An award to CEC of prejudgment and post-judgment interest, as permitted by law;

F.      An award to CEC of its reasonable attorneys' fees and costs, as permitted by law or equity; and

G.      An award to CEC of such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Under Rule 38, F.R.Civ.P., Defendants demand a jury trial for all claims and issues so triable.

DATED this 10th day of September, 2024.

                      **CHRISTENSEN & PREZEAU, PLLP**

            By:   <u>/s/ Cherche Prezeau</u>
                  **Cherche Prezeau**
                  The Montana Club Building
                  24 W. 6th Avenue, Suite 501
                  Helena, MT  59601

                  ATTORNEYS FOR DEFENDANT
                  CEC FACILITIES GROUP, LLC